**IT IS ORDERED as set forth below:**

**Date: April 22, 2022**



_____

**Barbara Ellis-Monro
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

IN RE:

SANDRA DOLORES CARDENAS and
STEVEN MARIO CARDENAS,

Debtors.

CASE NO. 11-62253-BEM

CHAPTER 7

**O R D E R**

This matter is before the Court on the Chapter 7 Trustee's (the "Trustee") *Application for Authorization to Employ Yaeger Law, PLLC and Keller Lenkner, LLC, as Special Counsel for Trustee* (the "Yaeger Application"). [Doc. 51]. The Trustee seeks to employ special counsel to assist in pursuing a claim arising from the implantation of a birth control device that resulted in injuries to Debtor Sandra Cardenas ("Ms. Cardenas"). The Yaeger Application came before the Court for hearing on March 29, 2022. Jordan E. Lubin and Laura Yeager appeared in support of the Yaeger Application. During the hearing, the Court raised questions about whether the claim is property of the estate and gave the Trustee an opportunity to file a supplemental brief

in support of the Yaeger Application. The Trustee filed the supplemental brief on April 7, 2022 [Doc. 54], and the Yaeger Application is now ripe for determination.

Debtors filed their Chapter 7 petition on April 23, 2011, and did not list any products liability or personal injury claims on Schedule B – Personal Property. [Doc. 1]. M. Denise Dotson was appointed as the Chapter 7 trustee. The meeting of creditors was held and concluded on May 27, 2011. On July 19, 2011, the trustee reported that she was investigating the possibility of assets. Subsequent interim reports by the trustee indicated that she was reviewing royalty interests. [Docs. 18, 21, 26]. On August 4, 2011, Debtors received a discharge. [Doc. 16]. On January 14, 2013 the trustee filed a report of no distribution, and the case was closed on January 23, 2013.

On December 18, 2020, the United States Trustee filed a motion to reopen the case on the grounds that Ms. Cardenas holds a products liability claim that the U.S. Trustee believes is property of the estate. [Doc. 30]. The motion was granted and the case was reopened on July 14, 2021. [Doc. 31]. Mr. Lubin was then appointed as the successor Chapter 7 trustee because Ms. Dotson was no longer on the trustee panel. The Trustee filed an application to employ Lubin Law, P.C. as attorney for the Trustee, in part to provide services in connection with the liquidation of the estate's interest in Ms. Cardenas' products liability claim. [Doc. 44]. That application was granted. [Doc. 48]. The Yaeger Application was filed on February 24, 2022. None of the motion to reopen, the application to employ Lubin Law, or the Yaeger Application set forth any facts regarding the date Ms. Cardenas received the implant or when she received or discovered her injuries. Attached to the Yaeger Application is an *Authority to Represent and Contingency Fee Agreement for Legal Services* (the "Employment Agreement") between Ms. Cardenas and Yaeger

2

Law PLLC and Keller Lenkner LLC, which states that the legal services at issue are related to Ms. Cardenas' use of "Essure or other similar devices." [Doc. 51 at 12].

In the supplemental brief, the Trustee states that the device was implanted on October 23, 2007, and that corrective surgery including removal of the device was performed on September 12, 2012. At the hearing, Ms. Yaeger stated that Ms. Cardenas had a hysterectomy and oophorectomy in 2012. On August 16, 2018, Ms. Cardenas entered into the Employment Agreement with Yaeger Law PLLC and Keller Lenkner LLC in connection with the claim.

Under 11 U.S.C. § 327(a), the Trustee may employ attorneys to assist him in carrying out his duties under the Bankruptcy Code. Those duties include collecting property of the estate and reducing it to money. 11 U.S.C. § 704(a)(1). If the product liability claim is not property of the estate, then there is no need for the Court to approve the Yaeger Application as the claim would belong to Ms. Cardenas to pursue as she sees fit.

Section 541(a) of the Bankruptcy Code defines property of the bankruptcy estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "It is well-settled that causes of action which have accrued prior to bankruptcy become part of the bankruptcy." *In re Alvarez*, 224 F.3d 1273, 1278 n.12 (11th Cir. 2000) (citing *Venn v. St. Paul Fire and Marine Ins. Co.*, 99 F.3d 1058, 1064 n.10 (11th Cir.1996) and *Miller v. Shallowford Community Hosp., Inc.*, 767 F.2d 1556, 1559 (11th Cir.1985)). "The question of whether a debtor's interest in property is property of the estate is a federal question, but the definition of property and issues about the nature and existence of the debtor's interest, are issues of state law.*" Bracewell v. Kelly (In Re Bracewell)*, 454 F.3d 1234, 1243 (11th Cir. 2006); *see also Witko v. Menotte (In re Witko)*, 374 F.3d 1040, 1043 (11th Cir. 2004) (noting that the *Alvarez* panel had not decided whether state law or federal law applied and stating, "[w]e now

3

reiterate that federal law determines whether an interest is property of the bankruptcy estate."). "[W]e look to state law to determine when a claim arises, and if it arises on or before the commencement of the bankruptcy case, it is part of the bankruptcy estate." *Bracewell*, 454 F.3d at 1242. "[U]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Witko*, 374 F.3d at 1043 (citing *Butner v. U.S.*, 440 U.S. 48, 55, 99 S. Ct. 914, 918, 59 L.Ed.2d 136 (1979).

The Trustee argues that under Georgia law, a cause of action for personal injury claims "accrues to the plaintiff as of the instant the injuries are inflicted." *Burns v. Brickle*, 106 Ga. App. 150, 153, 126 S.E.2d 633, 635 (1962). The Trustee contends that the injury to Ms. Cardenas was the insertion of the device, which occurred prepetition, even though the corrective surgery and the discovery of the harm occurred post-petition. The Trustee further argues that under *Alvarez*, Ms. Cardenas' knowledge of the cause of action is irrelevant because it relates to the statute of limitations rather than accrual of the cause of action. "*Alvarez* contains language strongly suggesting the discovery rule is not applicable when determining whether a lawsuit is estate property." *In re Webb*, 484 B.R. 501, 503 (Bankr. M.D. Ga. 2012); *see also In re Davis*, No. 10-24836-JRS, 2018 WL 2223076, at *3 (Bankr. N.D. Ga. May 15, 2018) (Sacca, J.).

In *Alvarez*, the Eleventh Circuit considered whether a Florida legal malpractice claim was property of the bankruptcy estate. 224 F.3d at 1276. The basis of the malpractice claim was the debtor's allegation that his lawyer disregarded his instructions to file a Chapter 11 case and instead filed a Chapter 7 case, which resulted in the debtor's loss of control over significant assets. *Id.* at 1275. Under Florida law, "a cause of action accrues 'when the last element constituting the cause of action occurs.'" *Id.* at 1276 (quoting Fla. Stat. Ann. § 95.031(1)). A claim

4

for legal malpractice in Florida has three elements, the last of which is that "the attorney's negligence was the proximate cause of loss to the client,"[1] known as the "redressable harm" element.[2] *Id.* (citing *Steele v. Kehoe*, 747 So.2d 931, 933 (Fla. 1999)). Because the redressable harm in *Alvarez* (loss of control over assets) occurred simultaneously with the filing of the bankruptcy case, the malpractice claim also accrued simultaneously with the bankruptcy filing. *Id.* at 1277-78. Because the bankruptcy estate includes property interests "as of" the bankruptcy filing as opposed to "before" or "prior to" filing, the malpractice claim was property of the estate. *Id.* at 1278.[3]

The Eleventh Circuit reached the opposite result in *Witko*, which also involved a Florida legal malpractice claim. 374 F.3d at 1043. The malpractice claim in *Witko* arose from an adverse outcome in an alimony proceeding. *Id.* The alimony proceeding was initiated prepetition but the adverse ruling occurred postpetition. *Id.* at 1044. The Court looked to Florida law to determine that a legal malpractice action does not result in harm, and therefore does not accrue, "until the underlying action is concluded with an outcome adverse to the client[.]" *Id.* The court noted that this distinguishes legal malpractice claims from other tort claims:

> The machinations of legal malpractice, especially the element requiring the conclusion of judicial proceedings, distinguish legal malpractice actions from virtually all other tort claims. Although proximate harm usually occurs in close temporal proximity to tortious conduct, legal malpractice harm often arises well after the

---

[1] The first two elements are the attorney's employment and the attorney's neglect of a reasonable duty. 224 F.3d at 1276.

[2] In a footnote, the court observed that the statute of limitations for a Florida legal malpractice claim does not start running until the cause of action is or should have been discovered and, therefore, the date the cause of action accrues (the operative date for determining whether it is property of the estate) may be different than the date the statute of limitations begins to run. 224 F.3d at 1276 n.7.

[3] In *Alvarez*, the Court did not decide whether state or federal law applied to determine whether the claim was property of the estate because it reached the same conclusion under either standard. 224 F.3d at 1276. Under federal law, the malpractice claim was property of the estate because the malpractice claim was sufficiently rooted in prepetition conduct, namely the prepetition formation of the attorney-client relationship and the prepetition direction to file a Chapter 11 case. *Id.* at 1279. The panel in *Bracewell* stated that the *Alvarez* panel did not need to decide this issue as it was already a settled question in the Circuit. 454 F.3d 1234, 1243 (citing cases).

5

>  attorney's failures. Otherwise stated, it is unlikely that a car accident victim could file her bankruptcy petition between the causal act and her resulting harm.

*Id.* As a result, the claim in *Witco* was not property of the bankruptcy estate. *Id.*

The question, then, is when does a products liability claim accrue under Georgia law? In *Amu v. Barnes*, 283 Ga. 549, 662 S.E.2d 113 (2008), a medical malpractice case, the Georgia Court of Appeals stated that "the true test to determine when the cause of action accrued is to ascertain the time when the plaintiff could first have maintained his action to a successful result." *Id.* at 551, 662 S.E.2d at 116 (internal quotation marks, alterations, and citations omitted). "An action for personal injury does not 'accrue' until the tort is complete, and a tort is not complete until injury is sustained." *Id.* (quotation marks and citation omitted); *Gardei v. Conway*, 313 Ga. 132, 139, 868 S.E.2d 775, 780 (2022) (same). The Georgia Supreme Court has explained that determining when a tort is complete is dependent on the nature of the tortious conduct and, as in *Alverez*, noted that the claim may accrue prior to the statute of limitations beginning to run:

> In such torts, where the injury is occasioned by violent external means, the result of the previous violation of a duty, no problem arises in fixing the date and time when the statute begins to run. Where, however, there is a breach of a duty owed to another, e.g., the failure to warn of the existence of a hazard capable of producing injury, and exposure to the hazard or the cumulative effects of continued exposure results in injury, *a cause of action accrues when exposure to the hazard first produces ascertainable injury*. While *the tort is then complete in the sense that it will support a claim*, it is nevertheless a tort of a continuing nature which tolls the statute of limitation so long as the continued exposure to the hazard is occasioned by the continued failure of the tortfeasor to warn the victim, and the statute of limitation does not commence to run under these circumstances until such time as the continued tortious act producing injury is eliminated, e.g., by an appropriate warning in respect to the hazard. The theory of a continuing tort was adopted, applied, and limited to surgical malpractice in *Parker v. Vaughan*, 124 Ga. App. 300, 183 S.E.2d 605. Today we recognize and extend this theory, as here explained, to those factual situations analogous to the situation here involved where any negligent or tortious act is

6

> of a continuing nature and produces injury in varying degrees over a period of time.

*Everhart v. Rich's, Inc.*, 229 Ga. 798, 801-02, 194 S.E.2d 425, 428 (1972) (discussing the continuing tort theory) (emphasis added).

The Trustee has described the cause of action as a products liability claim, which offers multiple pathways to liability, including strict liability and negligence. *See Sharp v. St. Judge Medical, S.C., Inc.*, 838 F. App'x 462, 468 (11th Cir. 2020) (concurring op.) (discussing the different types of product liability claims available under Georgia law). The relevant Georgia statute for strict liability provides:

> The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained.

O.C.G.A. § 51-1-11(b)(1). The elements of negligence in a product liability claim are that "the defendant owed the plaintiff a duty of care, the defendant breached this duty or violated the standard of care, and the breach or violation was the cause in fact of some legally cognizable damage or loss to the plaintiff." 15A Ga. Jur. § 39:4. In either case, the claim requires an injury and proximate cause.

In *Davis*, Judge Sacca considered whether a product liability claim arising from insertion of transvaginal mesh ("TVM") was property of the estate, when the TVM was inserted prepetition in 2010. 2018 WL 2223076, at *1. The trustee alleged that the FDA was issuing notices about complications from TVM as early as 2008, but the debtor did not become aware of potential complications until postpetition in 2011. *Id.* The court determined that the insertion of the TVM

7

was the basis for the debtor's claim, and that all the elements of the claim occurred prepetition, even if the debtor's knowledge of the cause of action developed postpetition. *Id.* at *3. In so ruling, the court agreed with the analysis in *Webb*.

In *Webb*, the debtor was diagnosed with congestive heart failure prepetition. 484 B.R. at 502. The debtor learned postpetition that certain medicine he had taken prepetition could have caused his heart condition, which resulted in a product liability claim. *Id.* The court found the product liability claim was property of the estate because it was "undisputed that everything, except for knowledge of cause, occurred prepetition." *Id.* at 504.

Judge Cavender recently considered these authorities in deciding whether to reopen a Chapter 7 case to allow the trustee to pursue a personal injury claim arising from the debtor's use of glyphosate, an herbicide linked to non-Hodgkin lymphoma ("NHL"). *In re Burris*, No. 09-78161-JWC, 2022 WL 1131950 (Bankr. N.D. Ga. April 15, 2022). The debtor in *Burris* developed NHL in 1997, prior to filing for bankruptcy in 2009. *Id.* at *1. However, no authoritative source linked glyphosate with NHL until the World Health Organization did so in 2015, also postpetition. *Id.* The United States Trustee argued that the personal injury claim accrued when the debtor's cancer was diagnosed. *Id.* at *3. Judge Cavender disagreed because, until glyphosate and NHL were first linked in 2015, the debtor could not have maintained a successful claim against the manufacturer. *Id.*

> Judge Cavender distinguished *Alvarez*, *Davis*, and *Webb*, because:
>
> the issue here is not Mr. Burris's individual knowledge of causation. The issue is that no one in the medical, scientific, or legal communities had established a causal link between glyphosate and NHL prior to 2015 …. Whatever *Webb*, *Davis*, and *Alvarez* say about the applicability of discovery of harm rules under § 541 when the individual debtor lacks knowledge of causation, they say nothing about the impossibility of being able to establish causation because

8

>  *no one* knew about a causal link between a debtor's prepetition
>  injury and some unknown chemical.

*Id.* at *3 (emphasis in original) (footnote omitted). In *Davis*, the FDA issued warnings about TVM prepetition and prior to the debtor's implantation; *Webb* does not discuss when the link between the debtor's medicine and its effects was discovered by the scientific community. *Id.* n.5.

Ms. Cardenas' cause of action accrued when she could first maintain it to a successful result. This could only be done once a causal connection was established between her injuries and the medical device. The record is devoid of any facts about when that connection was established by the medical, scientific, or legal communities. Additionally, it is not clear to the Court that the implantation of the device constituted an injury in accordance with the Georgia law set forth above, as opposed to it resulting in subsequent injury.[4] Regardless of which event constitutes the injury, the Court cannot determine at what point Mr. Cardenas' could have established the element of causation. Therefore, the Court cannot conclude that the cause of action is property of the estate. Accordingly, it is

ORDERED that the Yaeger Application is denied without prejudice to the Trustee supplementing the record with additional facts to show when Ms. Cardenas could first have maintained the action to a successful result.

**END OF ORDER**

---

[4] *See, e.g., Harvey v. Merchan*, 311 Ga. 811, 815, 860 S.E.2d 561, 568 (2021). In *Harvey*, the court said: "For actions based on personal injury, a tort is complete when an injury results from the wrongful act or omission." *Id.* In *Harvey* the court discussed its ruling in *Everhart*, in which it said that a tort would be complete for purposes of the statute of limitations when the exposure to a hazard capable of producing injury "produces an ascertainable injury." *Id.* at 816, 860 S.E.2d at 569.

9

**Distribution List**

Sandra Dolores Cardenas
504 Gregory Lane
Acworth, GA 30102

Steven Mario Cardenas
504 Gregory Lane
Acworth, GA 30102

Angel M. Jacobs
Law Offices of Angel M. Van Wieren, P.C.
1415 Mims St., SW
Atlanta, GA 30314

Jordan E. Lubin
Lubin Law, P.C.
Building 2
8325 Dunwoody Place
Atlanta, GA 30350-3307

Office of the United States Trustee
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

Laura Yaeger, Esq.
Yeager Law, PLLC
834 3rd Avenue S
Tierra Verde, Florida 33715

Nicole C. Berg, Esq.
Keller Lenkner, LLC
150 N. Riverside Plaza, Suite 4720
Chicago, Illinois 60606